FILED
 2015 Mar-30  PM 02:30
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TERESA A. WELLS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. |
| **CAROLYN W. COLVIN** ) | **2:13-CV-1786-MHH** |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I.     Introduction

Claimant Teresa A. Wells brings this action pursuant to Title II of Section 405(g) of the Social Security Act.  Ms. Wells seeks judicial review of a final adverse decision of the Commissioner of the Social Security Administration.[1]  The Commissioner affirmed the decision of the Administrative Law Judge ("ALJ") who denied Ms. Wells's claim for a period of disability, disability insurance benefits, and widow's disability

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Therefore, she should be substituted for Commissioner Michael J. Astrue as defendant in this action.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending . . . Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

benefits. (Doc. 9, p. 1). After careful review, the Court finds that substantial evidence supports the ALJ's decision, and the Court affirms the Commissioner's ruling.

## II.     Standard of Review

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III.  Procedural and Factual Background

On July 28, 2010, Ms. Wells applied for widow's disability benefits, a period of disability, and disability insurance benefits. (Doc. 6-6, pp. 25–26). The Social Security Administration denied Ms. Wells's application for disability benefits on October 29, 2010 and denied her application for disabled widow's benefits on November 1, 2010. (Doc. 6-5, pp. 2, 9). At Ms. Wells's request, on April 12, 2012, an Administrative Law Judge conducted a hearing concerning Ms. Wells's application. (Doc. 6-3, pp. 89–119). Ms. Wells and an impartial vocational expert testified at the hearing. (*Id.*). At the time of her hearing, Ms. Wells was 55 years old.[2] Ms. Wells has a high school education and completed some college. (Doc. 9, p. 4; Doc. 6-3, p. 95). Her past relevant work experience is as an inventory clerk, an

---

[2] At 55 years of age, 20 C.F.R. §§404.1563(e) and 416.963(e) designate Ms. Wells as a "person of advanced age." (*See* Doc. 6-3, p. 95; Doc. 9, p. 4).

3

administrative clerk, a receptionist, a data entry clerk, and an employment manager.  (Doc. 9, p. 4; Doc. 6-3, pp. 114–15; Doc. 6-6, pp. 2–3).

On April 20, 2012, the ALJ denied Ms. Wells's request for disability benefits, concluding that Ms. Wells did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations.  (Doc. 6-3, p. 55).  A week later, on April 27, 2012, the ALJ denied Ms. Wells's request for disabled widow's benefits, based on the conclusion that Ms. Well did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations.[3]  (Doc. 6-3, p. 28).  In his two-part decision,[4] the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled" and explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step."  (Doc. 6-3, pp. 32, 48).

The ALJ found that Ms. Wells had not "engaged in substantial gainful activity since November 11, 2009, the alleged onset date" in her claim for

---

[3] For the purposes of this opinion, the Court will treat the two ALJ decisions as a two-part decision that addresses the same issue—whether Ms. Wells is disabled.  The ALJ indicated that the decisions should be treated as a "two-parter" with "two claims" in his decision notes.  (Doc. 6-3, p. 27).

[4] The ALJ wrote a two-part decision because Ms. Wells applied for both spousal benefits and disability benefits.  The ALJ referred to the opinion as a –two parter because the reasons for denying Ms. Wells's application for benefits were the similar in each opinion.

4

disability benefits, and that Ms. Wells had not "engaged in substantial gainful activity since March 7, 2007, the alleged onset date" for her disabled widow's benefits.[5]  (Doc. 6-3, pp. 33, 49).  Ms. Wells met the non-disability requirements for the disabled widow's benefits claim.  (Doc. 6-3, p. 33).  In addition, the ALJ concluded that Ms. Wells had "the following severe impairments: degenerative disc disease, cervical spondylosis, [and] rheumatoid arthritis."  (Doc. 6-3, pp. 33, 49).  The ALJ found the impairments to be severe.  (Doc. 6-3, pp. 34, 49).[6]  Still, the ALJ opined that "the medical evidence does not establish the existence of [the listed spinal disorders]. . . . Furthermore, there is no evidence that [Ms. Wells's] back disorder has resulted in the inability to ambulate effectively as defined [in the Regulations]."  (Doc. 6-3, pp. 34, 50).  The ALJ concluded that Ms. Wells's cervical spondylosis did not meet the requirements for listing 1.02, because "evidence does not demonstrate that [Ms. Wells] has sufficient difficulty in performing fine and gross movements." (Doc. 6-3, pp. 34, 50).  The ALJ did not find sufficient evidence that suffered "an inability to

---

[5] The Court reviewed both the ALJ's decision and Ms. Wells's medical records.  The Court found that the ALJ's description of Ms. Wells's medical evaluations is accurate.  In a number of instances in this opinion, the Court has provided citations not only to the ALJ's decision but also to the underlying records to illustrate that there is no discrepancy between the two.

[6] In contrast, the ALJ found that Ms. Wells's mental impairment of depression and medical impairments of hypertension, diverticulosis, and hemorrhoids were non-severe. (Doc. 6-3, pp. 34, 50).

5

ambulate or perform fine and gross movements," and therefore her rheumatoid arthritis did not meet listing 14.09.  (Doc. 6-3, pp. 34–35, 50–51).

Based on these factual findings, the ALJ concluded that Ms. Wells had the "residual functional capacity to perform sedentary work; . . . except that she could never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, and occasionally stoop, kneel, crouch, crawl, or engage in activities requiring balance.  She should avoid concentrated exposure to extreme vibration."  (Doc. 6-3, pp. 35, 51).

The ALJ considered a report from Dr. W. Curry McEvoy, a physician who conducted a consultative examination on Ms. Wells.  Dr. McEvoy's notes state that Ms. Wells, had a normal gait and range of motion, used a cane "intermittently but [it was] not a necessity," had no apparent coordination problems, 4/5 strength in her lower extremities, and a normal affect and normal mood."  (Doc. 6-3, p. 36; *see* Doc. 6-8, pp. 25–26).  Dr. McEvoy advised that Ms. Wells "could stand or walk for fro[m] 6 [to] 8 hours" in an 8-hour day with "frequent breaks."  (Doc. 6-8, p. 26).  The notes state Ms. Wells had "no limitations in the amount of time that [Ms. Wells] can sit in an 8 hour day."  (*Id.*).  Dr. McEvoy also noted that Ms. Wells could not likely lift more than twenty pounds and that she was limited

in her ability to stoop, crouch, or kneel.  (Doc. 6-8, p. 26); *see also* (Doc. 6-3, pp. 36–37).  Because Dr. McEvoy's examination of Ms. Wells was "valuable and largely consistent with the objective evidence" the ALJ gave his opinions moderate weight.  (Doc. 6-3, pp. 37, 53).  The ALJ added that, "given [Ms. Wells]'s testimony at [the] hearing, and giving her some benefit of the doubt, the weight of the evidence indicates that she is more limited than [Dr. McEvoy] determined at his examination." (Doc. 6-3, p. 37).

  The ALJ considered the medical records of several doctors who examined Ms. Wells after the alleged onset date of her disability.  (Doc. 6-3, p. 36).  Dr. Charles H. Clark found that Ms. Wells showed mild scoliosis, but he found that there was "no clear-cut stenosis or nerve root encroachment," and Ms. Wells appeared "alert, oriented, and in no acute distress."  (Doc. 6-3, p. 36; Doc. 6-8, p. 7).  The ALJ found that Dr. Jeremy Barlow performed an epidural injection on Ms. Wells due to her complaints about back pain.  (Doc. 6-3, p. 36; Doc. 6-8, pp. 2–6).  The ALJ also noted that Dr. Nop Unnopet recorded in his treatment notes that Ms. Wells was "doing well" on her medication, her rheumatoid arthritis was "stable."  (Doc. 6-3, p. 36; Doc. 6-8, p. 41).  Ms. Wells told Dr. Unnopet that she had discontinued Yoga and some other activities out of fear that they might aggravate her conditions.  (Doc. 6-8, p. 44).  But Dr. Unnopet told Ms. Wells

7

that her conditions "should not inhibit her from doing her daily activities," and that Ms. Wells should continue doing Yoga. (*Id.*). The ALJ thus concluded that Ms. Wells appeared to be "in no acute distress." (Doc. 6-3, p. 36).

Next, the ALJ considered the examination of Dr. Douglas Moore. (Doc. 6-3, p. 36). Dr. Moore found that Ms. Wells had a "diminished range-of-motion in her back, a negative straight-leg raise test result on her right [leg], and positive [straight-leg raise test] result on her left [leg]." (Doc. 6-9, p. 5). As a result, Dr. Moore "considered and rejected possible surgery." (Doc. 6-3, p. 36; Doc. 6-9, p. 3). The ALJ reviewed the treatment notes of Dr. Thomas A. Staner. Dr. Staner reported that although he was unable to "elicit a tremor," he "suspect[ed] [Ms. Wells] has essential tremor" but noted that it is "lessened when [Ms. Wells] takes Xanax." (Doc. 6-3, p. 36; Doc. 6-14, p. 20).

The ALJ also took into account Dr. Keith Langford's medical record review. Dr. Langford, a state agency consultant, found that Ms. Wells was "able to stand or walk for 6 [to] 8 hours in an 8 [hour] workday with frequent breaks[,] and [had no] limitation[s] on sitting in an 8 [hour] day." (Doc. 6-8, p. 33). The ALJ interpreted these notes as an indication that Ms. Wells is capable of medium work. (Doc. 6-3, p. 37). Dr. Langford also

8

suggested Dr. McEvoy's finding of work limitations was based solely on Ms. Wells's age. (Doc. 6-8, p. 37). The ALJ gave little weight to Dr. Langford's findings about Ms. Wells's physical limitations because the findings were "inconsistent with the weight of the evidence." (Doc. 6-3, p. 37).

The ALJ reviewed the results of Dr. Jack Zaremba's examination conducted at the referral of Ms. Wells's attorney. (Doc. 6-3, p. 38). The record indicates that Ms. Wells does not have an "extensive treatment history" with Dr. Zaremba. (Doc. 6-3, p. 38). The ALJ found Dr. Zaremba's examination results to be inconsistent with other treatment records. (Doc. 6-3, p. 38). The ALJ acknowledged that Dr. Zaremba

> concluded that [Ms. Wells] had a substantially limited ability to stand and walk, required an assistive device, (while, somewhat confusingly, noting that she did not bring her cane with her to the examination), and [] that her pain was 'present to such an extent to be distracting to adequate performance of daily activities or work.'

(Doc. 6-3, p. 38; Doc. 6-14, pp. 8–15). The ALJ afforded little weight to Dr. Zaremba's opinion because his report was largely based on Ms. Well's "subjective complaints of pain" and because the ALJ determined that Dr. Zaremba's opinions were inconsistent with Ms. Wells's reports of pain to other physicians and objective evidence of Ms. Wells's functional capabilities. (Doc. 6-3, p. 38).

9

The ALJ gave little weight to the opinion of a chiropractor, John Sparks, DC. (Doc. 6-3, p. 38). Ms. Wells sought treatment from Mr. Sparks for a brief period of time. (Doc. 6-3, p. 38; Doc. 6-8, pp. 58–85). Mr. Sparks discharged Ms. Wells when her pain began to "plateau," though she had experienced increased pain when sitting. (Doc. 6-3, p. 38). The ALJ determined that Mr. Sparks's recommendations for sitting "were inconsistent with the weight of the evidence," and he was not a "credible medical source." (*Id.*). Thus, the ALJ afforded the opinions of Mr. Sparks little weight. (*Id.*). The ALJ also considered a vocational expert's opinion offered at Ms. Wells's April 12, 2012 hearing. The VE testified that a person of Ms. Wells's age, education, work experience, and RFC would be capable of performing past work, such as: "inventory clerk, administrative clerk, receptionist, data entry [] clerk, [and] employment agency manager." (Doc. 6-3, pp. 39, 114–17).

Ultimately, the ALJ found that Ms. Wells "is capable of performing past relevant work as a inventory clerk, administrative clerk, data entry clerk, [or] employment agency manager." (Doc. 6-3, p. 39). The ALJ reasoned that: "comparing [Ms. Wells]'s residual functional capacity with the physical and mental demands of this work, the undersigned finds that [Ms. Wells] is able to perform it as actually and generally performed." (*Id.*).

Consequently, the ALJ decided that Ms. Wells is not disabled. (Doc. 6-3, pp. 39, 55).

The Commissioner's decision became final when the Appeals Council refused to review the ALJ's two-part decision. (Doc. 6-3, pp. 2, 8). Having exhausted all administrative remedies, Ms. Wells filed this action for judicial review pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

## IV. Analysis

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the ALJ applies a sequential, five-step evaluation:

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the

>light of his residual functional capacity, age, education, and work experience.

*Gaskin*, 533 Fed. Appx. at 930 (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

The ALJ found that Ms. Wells's degenerative disc disease, cervical spondylosis, and rheumatoid arthritis constitute severe physical impairments that "cause more than a minimal harmful limitation on [Ms. Wells]'s ability to do basic work activities." (Doc. 6-3, pp. 33–34). Nevertheless, the ALJ concluded that Ms. Wells is not disabled because she is able to perform her past relevant work as an inventory clerk, administrative clerk, receptionist, data entry clerk, or employment agency manager despite her impairments. (Doc. 6-3, p. 39). The ALJ relied heavily on the following evidence:

- Dr. McEvoy's opinion that Ms. Wells had a normal gait, normal coordination, had normal range of motion in her joints, no apparent coordination problems, 4/5 strength in her lower extremities, and a normal affect and mood, and "used a cane intermittently." (Doc. 6-8, p. 26).

- Dr. Unnoppet's finding that Ms. Wells was "doing well" on her medication and her rheumatoid arthritis was "stable." (Doc. 6-8, p. 41).

- Dr. Moore's rejection of possible surgery. (Doc. 6-9, p. 3)

- the vocational expert's opinion that a person of Ms. Wells's age, education, work experience, and RFC "would be capable of performing work such as [Ms. Wells]'s past relevant work as an inventory clerk, administrative clerk, receptionist, data entry clerk, or employment agency manager." (Doc. 6-3, pp. 39, 114–17).

Ms. Wells argues that despite this evidence, she is entitled to relief from the ALJ's decision because the ALJ did not give sufficient weight to the opinions of Ms. Wells's treating chiropractor, Mr. Sparks, and Ms. Wells's examining physician, Dr. Zaremba. (Doc. 9, pp. 8, 12). The Court disagrees.

"The opinion of a treating physician 'must be given substantial or considerable weight unless good cause is shown to the contrary.'" *Davis v. Astrue*, 287 Fed. Appx. 748, 753 (11th Cir. 2008) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240) (11th Cir. 2004)). Good cause exists when evidence in the record fails to bolster a doctor's opinion, supports a contrary finding, or when the doctor's opinions are inconsistent with the doctor's own medical records. *Lewis*, 125 F.3d at 1440. The ALJ establishes good cause by: (1) clearly articulating adequate reasons for assigning less weight and (2) specifically identifying substantial evidence in the record that supports the finding. *See Mills v. Astrue*, 226 Fed. Appx. 926, 931 (11th Cir. 2007); *Miller v. Barnhart*, 182 Fed. Appx. 959, 964 (11th Cir. 2006); *Beck v. Astrue*, 663 F. Supp. 2d 1212, 1217–18 (N.D. Ala. 2009).

The ALJ is not required to give considerable weight to the opinions of chiropractors, because chiropractors are not "acceptable medical sources." *Crawford*, 363 F.3d at 1160. Therefore, the ALJ "has no duty to give significant or controlling weight to a chiropractor's views because . . . a chiropractor is not a 'medical source' who can offer medical opinions." *Miles v. Soc. Sec. Admin., Comm'r*, 469 Fed. Appx. 743, 745 (11th Cir. 2012). Although a chiropractor is not a 'medical source,' a claimant may present evidence from a chiropractor to illustrate the severity of impairment or how the impairment affects a claimant's ability to work. *See* 20 C.F.R. § 404.1513(d).

The ALJ clearly articulated his reasons for affording Mr. Sparks's opinion little weight. The ALJ expressly found that Mr. Sparks is not a credible medical source. (Doc. 6-3, p. 38). In accordance with 20 C.F.R. §§ 404.1513(a) and (d)(1), the ALJ is not required to give any weight to the opinions proffered by Mr. Sparks about whether Ms. Wells was disabled. Even if the ALJ had done so, Mr. Sparks's treatment records do not necessarily support a finding of disability. The ALJ found that Mr. Sparks's records show that he discharged Ms. Wells after her pain began to "plateau," and that Ms. Wells experienced pain when sitting. (Doc. 6-3, p. 38). Indeed, a review of Mr. Sparks's records indicates that Ms. Wells's back

pain improved with treatment, and over the course of her last few visits to Mr. Sparks in the spring of 2011, Ms. Wells consistently reported that her back pain was a 5 on a 10-point scale. (Doc. 6-8, pp. 73–85).  Mr. Sparks's opinion regarding Ms. Wells's sitting limitation was inconsistent with the weight of the evidence. (*Id*.).  The ALJ properly afforded little weight to the opinions of Mr. Sparks. (*Id.*).

Ms. Wells also argues that the ALJ failed to give proper weight to the medical opinions of Dr. Zaremba, her examining physician.  Ms. Wells was referred to Dr. Zaremba by her attorney. (Doc. 6-3, p. 38; Doc. 11, p. 11). Dr. Zaremba was a one-time consultative physician who did not have an ongoing treatment relationship with Ms. Wells. (*Id.*).  As the ALJ found, medical evidence contradicted Dr. Zaremba's opinion that Ms. Wells had limited ability to stand and walk, required an assistive device, and had pain sufficient to distract her from adequately performing daily activities or work. (Doc. 6-3, p. 38).  For example, in a letter to Dr. Moore, Dr. Unnoppet explained that he encouraged Ms. Wells to maintain her daily activities and to return to the yoga classes that she had stopped taking for fear of aggravating her back pain. (Doc. 6-8, pp. 44–45).  Despite Dr. Zaremba's opinion that Ms. Wells required an assistive device and experienced pain on

"10/10" scale with activity, Ms. Wells did not bring a cane with her to her examination with Dr. Zaremba. (Doc. 6-3, p. 38, Doc. 6-14, p. 8).

The ALJ noted that Dr. Zaremba relied substantially on Ms. Wells's subjective complaints of pain. (Doc. 6-3, p. 38). For example, while Dr. Zaremba determined that Ms. Wells's pain levels would distract her from adequate performance of daily work activities, Ms. Wells did not report "significant distress" at medical visits with treating physicians or at the review hearing. (*Id.*). In fact, at the hearing in this matter, Ms. Wells testified that when she takes her prescription medication, her pain is a 4 on a 10-point scale. (Doc. 6-3, p. 100). Accordingly, the ALJ determined that Dr. Zaremba's opinions were "inconsistent with the weight of the evidence." (Doc. 6-3, p. 38); *see* 20 C.F.R. § 404.1520(b).

The ALJ did not err in assigning little weight to Dr. Zaremba's opinion. (Doc. 6-3, p. 38); *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence).

## V. Conclusion

The Court concludes the ALJ's decision was based upon substantial evidence and consistent with applicable legal standards. Accordingly, the decision of the Commissioner is **AFFIRMED**. The Court will enter a separate final judgment.

**DONE** and **ORDERED** this March 30, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE